United States District Court
Southern District of Texas
**ENTERED**
February 16, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERMA J. ANDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-2444 |
| | § | |
| NANCY. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No.27), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 28), Defendant's Motion for Summary Judgment (Document No. 14) and Memorandum in Support (Document No. 15) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 27). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 14) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No.27) is DENIED, and the

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on March 15, 2016. (Document No. 12).

decision of the Commissioner is AFFIRMED.

## I. Introduction

Plaintiff, Erma J. Anderson ("Anderson") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI"). Anderson argues that the Administrative Law Judge ("ALJ"), William B. Howard, committed errors of law when he found Anderson was not disabled. Anderson argues that the ALJ's credibility determination was improper and that his residual functional capacity assessment is not supported by substantial evidence. Anderson seeks an order reversing the ALJ's decision, and awarding benefits, or in the alternative, remanding her claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Anderson was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II. Administrative Proceedings

On January 14, 2013, Anderson filed for SSI claiming she has been disabled since January 14, 2013, due to diabetes, sciatica, and back and leg problems. (Tr. 238-243).[2] The Social Security Administration denied her application at the initial and reconsideration stages. (Tr.61-71). Anderson then requested an hearing before an ALJ. (Tr. 95-97). The Social Security Administration granted her request, and the ALJ held a hearing on June 19, 2014. (Tr. 31-52). On August 11, 2014, the ALJ issued his decision finding Anderson not disabled. (Tr.12-20).

---

[2] Anderson amended her alleged disability onset date to January 14, 2013, at the June 19, 2014, hearing. (Tr. 35).

Anderson sought review by the Appeals Council of the ALJ's adverse decision. (Tr.6-8). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Anderson's contentions in light of the applicable regulations and evidence, the Appeals Council, on June 18, 2015, concluded that there was no basis upon which to grant Anderson's request for review. (Tr. 1-3). The ALJ's findings and decision thus became final.

Anderson has timely filed her appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 14). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 27). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 721. (Document Nos. 8 & 9). There is no dispute as to the facts contained therein.

## III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the

decision of the Commissioner of Social Security with or without remanding the case for a rehearing"
when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine
the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d
1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues
de novo, nor substitute its judgment" for that of the Commissioner even if the evidence
preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th
Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in
the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.
1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to
be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305
U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance."
*Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a
suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found
only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"
*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d
1127 (5th Cir. 1973)).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the
burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act
defines disability as the "inability to engage in any substantial gainful activity by reason of any

4

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques.  *Id.*   § 423(d)(3).  The impairment must be so severe as to limit

the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which [she] lives, or whether a specific job vacancy exists for
> [her], or whether [she] would be hired if [she] applied for work.

*Id.*  § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is

suffering from a disability.  Rather, a claimant is disabled only if she is "incapable of engaging in

any substantial gainful activity."  *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting

*Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe" impairment or combination of
impairments, she will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in
Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not
disabled" must be made; and

5.  If the claimant's impairment prevents her from doing any other substantial
gainful activity, taking into consideration her age, education, past work experience,
and residual functional capacity, she will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v.*

*Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

In the instant action, the ALJ determined, in his August 11, 2014, decision that Anderson was not disabled at step five. In particular, the ALJ determined that Anderson had not engaged in substantial gainful activity since December 27, 2012 (step one); that Anderson's hypertension, disorders of the back, diabetes, obesity and degenerative joint disease of the shoulder were severe impairments (step two); that Anderson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 of the regulations (step three); that Anderson had the RFC to perform a limited range of light work. In particular,

> [T]he claimant has the residual functional capacity to perform light work. . . Specifically, the claimant can stand and/or walk for a total of about four hours in an eight-hour workday. She can sit for at least six hours in an eight-hour workday. She can lift or carry 20 lbs. occasionally and 10 lbs. frequently. However, the claimant should never be required to climb ropes, ladders, or scaffolds. The claimant can only occasionally stoop, crouch, kneel, crawl, and negotiate stairs and ramps. Further, the claimant should never be required to perform overhead reaching with the dominant upper extremity. (Tr. 16)

The ALJ further found that Anderson has no past relevant work (step four); and that based on Anderson's RFC, age, limited education, no past relevant work experience, and the testimony of a vocational expert, that Anderson could perform work as an officer helper, a storage facility rental

clerk, and a courier, and that Anderson was not disabled within the meaning of the Act (step five). As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

The objective medical evidence shows that Anderson has been treated for hypertension, diabetes, and back and shoulder problems. She is obese.

The medical records from the relevant period of time, December 27, 2012, through August 11, 2014, show that Anderson received medical care at the Squatty-Lyons Clinic in Houston, Texas[3].

---

[3] The records show that Anderson has been treated at the Squatty-Lyons clinic since 2007. At that time, her primary care doctor was Dr. Srinivasamurthy. The undersigned notes that an x-ray of the hip taken March 7, 2007, revealed minimal degenerative arthritis in the hip joints. (Tr. 567). On January 31, 2011, Anderson came to the clinic complaining of right flank pain. (Tr. 398-402, 506-512). An examination of her back revealed she had a positive straight leg raise on the right at 20 degrees. Results from a February 21, 2011, appointment (Tr. 394-397, 500-505), show Anderson was negative for straight leg raising or CVA tenderness. (Tr. 396, 503). Anderson continued to complain of right lower back pain at her March 30, 2011, appointment. (Tr. 390-392, 496-498). She reported using an umbrella in the morning to support herself to go to the bathroom. Straight leg raising was positive on the right leg at 45 degrees and 60 degrees on the left leg. An x-ray of the lumbar spine that was taken on April 7, 2011, revealed mild degenerative changes. (Tr. 499, 392-393, 384, 390). Anderson sought treatment for right leg pain at the Memorial Hermann Northeast Hospital Emergency Room on April 10, 2011. (Tr. 343-380). A scan of the right lower extremity was negative for deep vein thrombosis. (Tr. 354, 380). In September 2011, Dr. Sidhu became Anderson's primary physician. Examination results from September 26, 2011 (Tr. 472-477), March 28, 2012 (Tr. 468-472, 606-610), and June 25, 2012 (Tr. 461-467, 599-605) show Anderson had a normal range of motion.

7

On January 11, 2013, Anderson was treated by Dr. Sidhu. (Tr. 456-458, 594-597). Anderson complained of leg pain and right shoulder pain. Dr. Sidhu noted that neurologically, Anderson's strength was 5/5, Romberg sign was negative and she had normal gait and station. As for the back exam, Anderson had pain with motion, sacroiliac joints and sciatic notches were tender, negative straight leg raise bilaterally, normal reflexes and strength bilaterally in the lower extremities and the sensory exam results were intact. The range of motion in the right shoulder was limited above 90 degrees. X-rays of the right shoulder showed mild acromioclavicular degenerative joint disease. (Tr. 459, 597, 629).

Anderson returned to the clinic on January 25, 2013. (Tr. 451-453, 590-592). Again, she complained of back pain. With respect to the examination of Anderson's back, Dr. Sidhu wrote:

> antalgic gait, limited range of motion, pain with motion noted during exam, tenderness noted left hip, sacroiliac joints and sciatic notches tender, normal reflexes and strength bilateral lower extremities, sensory exam intact bilateral lower extremities and strength bilateral lower extremities, sensory exam intact bilateral lower extremities
> neurological: DTR's normal and symmetric, motor and sensory grossly normal bilaterally, normal muscle tone, no tremors, strength 5/5, Romberg sign negative, normal gait and station.

Dr. Sidhu ordered x-rays of the lumbar spine. The x-rays were taken on January 28, 2013, and were compared to x-rays taken on April 7, 2011 of the lumbar spine. The radiologist opined that Anderson has moderate to severe degenerative disc disease at L4-L5, progressed compared with 2011. X-rays were also taken of the hip. (Tr. 454-455, 593, 627). The x-rays showed moderate circumferential bilateral hip joint space narrowing.

Anderson returned to the Squatty-Lyons Clinic on February 15, 2013, for a follow up appointment with Dr. Sidhu. (Tr. 445-448, 583-589). According to the progress notes, Dr. Sidhu

8

discussed the x-rays results with Anderson.  The examination note shows that neurologically Anderson was intact.  As for her back examination, Dr. Sidhu noted that Anderson had an "antalgic gait, limited range of motion, and pain with motion noted during exam." (Tr. 448, 587).

The record further shows that on March 19, 2013, Anderson had an MRI of the lumbar spine. (Tr. 433-434, 622).  The MRI showed the following:

> L4-L5 nd L5-S1 spondylosis and facet arthropathy with nerve impingement at each level described above
> L1-L2 and L2-L3 unremarkable
> L5-S1 facet hypertrophy.  No stenosis
> L3-L4:  Loss of disc height and signal with small diffuse disc bulge and superimposed broad-based right foramina protrusion measuring approximately 4 mm. There is severe right foramina narrowing with mass effect on the right exiting L3 nerve root. There is some flattening of the left L3 nerve root sleeve without displacement or thickening.
> L4-L5:  Loss of disc height and signal with diffuse disc bulge and broad-based right subarticular and foramina protrusion/extrusion with disc material migrating superiorly along the L4 vertebral body. There is stenosis of the spinal canal without significant cauda quina crowding. There is right lateral recess narrowing displacing the right descending L5 nerve root. The neural foramina are mildly narrowed without obvious impingement.

Based on the above findings, the radiologist opined that Anderson has no significant spinal stenosis.

Anderson returned to the Squatty-Lyons Clinic on April 1, 2013.  (Tr. 441-444, 577-582). The exam results were unchanged from the previous month.  Dr. Sidhu recommended that Anderson undergo additional testing (an EMG) but she declined.

Anderson returned to the Squatty-Lyons Clinic on April 29, 2013, for a diabetes check with Dr. Sidhu.  (Tr. 572-576).  Dr. Sidhu noted that Anderson had a normal range of motion.  She was also seen by Dr. Sidhu on August 2, 2013.  (Tr. 717-720).  Anderson returned to the Squatty-Lyons Clinic on December 18, 2013, and was seen by a new physician, Kelley W. Carroll, M.D.  for a diabetes check.  (Tr. 636-637, 708-716).  Dr. Carroll noted that Anderson had no edema and was

neurologically intact. Anderson returned to the clinic on February 3, 2014 (Tr. 697-707), and on March 3, 2014. (Tr. 643-644, 682-691). Anderson described her pain as "moderate" and that standing makes it worse. She was referred for steroid injections. At her March 12, 2014, appointment at the Squatty-Lyons Clinic, for a diabetes check, she weighed 240 pounds and reported poor nutrition. (Tr. 647-648, 671-680). The progress note from Anderson's March 27, 2014, office visit shows she had a normal range of motion with no pain noted. (Tr. 652-653, 667-669). The final treatment note from the Squatty-Lyons Clinic is from Anderson's April 14, 2014, office visit for treatment of diabetes. (Tr. 657-666).

A disability determination unit physician, Jeanie Kwun, M.D., completed a RFC assessment on April 8, 2013. Based on her review of the objective medical evidence, Dr. Kwun opined that Anderson could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 2 hours, sit about 6 hours in an 8 hour work-day, and unlimited push/pull. Dr. Kwun further opined that Anderson has no postural, manipulative, visual, communicative or environmental limitations. (Tr. 57-58).

A second disability determination unit physician, Robin Rosenstock, M.D., reviewed Anderson's records and reached a slightly different RFC. Dr. Rosenstock opined that Anderson would occasionally lift and /or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. She was limited in her ability to push and/or pull. As for postural limitation, Dr. Rosenstock opined that Anderson could occasionally climb ramps/stair and never climb ladders/ropes/scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Rosenstock found that Anderson has no manipulative, visual, communicative, or environmental limitations. (Tr. 66-67).

10

In connection with her SSI application, Anderson completed a Function Report on July 9, 2011. (Tr. 261-268). Anderson described her impairments as follows: "My torn sciatic nerve makes it hard to me to stand, drive, and sit for long periods of time. My diabetes also randomly sometimes put me in a state of un-activity. My diabetes medicine also makes me lose appetite, have stomach pains, diarrhea, and causes weakness." (Tr. 261). Anderson described a typical day as waking up, taking her nephew to school, taking her medicine, eating, laying in bed, napping, picking her nephew up from school, fixing something to eat, taking medicine, showering, praying, and going to bed. (Tr. 262). The types of meals prepared by Anderson include sandwiches and microwave meals. (Tr. 263). With respect to household chores, Anderson stated that she makes her bed, cleans her personal bathroom, and puts dishes in the dishwasher. (Tr. 263). Anderson's hobbies include reading the Bible, watching television and listening to music. (Tr. 285). Anderson stated that she has problems lifting, squatting, bending, standing, reaching, walking, sitting, and kneeling. She estimated she could lift 7 to 9 pounds. She uses a cane when walking, all the time. (Tr. 267).

Anderson completed a second function report on March 14, 2013. (Tr. 281-288). Anderson wrote that she cannot work "due to neuropathy in my leg/side area, and a torn sciatic nerve, standing, sitting, and driving become things that are very difficult or close to impossible to do. My nerve and diabetic medicine also cause side effects such as diarrhea, loss of appetite and weakness." (Tr. 281). Most of Anderson's responses concerning her hobbies and functional limitations are identical to the first Function Report. (Tr. 285-286). She wrote that she has difficulty cooking on the stove. (Tr. 285).

Anderson testified at the June 19, 2014, hearing. Anderson testified that she sometimes uses a cane. Anderson noted that she uses the cane when going downstairs or coming upstairs but

11

otherwise walks without a cane because it "kind of trips me." She added that she did not bring the cane to the hearing. (Tr. 38). Anderson stated that had not worked in a long time. (Tr. 39). When questioned about her daily activities, Anderson testified that she spends the day either laying down or sitting in a chair, and watching television, if she is not sleeping. (Tr. 39, 47). As for cooking, Anderson stated that she makes a sandwich or prepares meals in the microwave such as Hormel meals and Spaghettios. (Tr. 39-40, 42). She also testified that she eats fruits as well as vegetables, which can be cooked in the microwave. (Tr. 42, 48). Anderson testified that "it it's hard trying to sit up at the stove and cook." (Tr. 48). Anderson denied washing dishes. She loads them in the dishwasher. (Tr. 40). She also stated she is able to do laundry in the apartment complex where she resides. (Tr. 40). As for cleaning, Anderson testified she dusts but does not sweep and occassionally vacuums. (Tr. 40). Anderson denied any hobbies. (Tr. 41). She added that she used to walk but no longer exercises. (Tr. 41). For fun, Anderson watches television or listens to music. (Tr. 41). She also attends church. (Tr. 41). Anderson testified that she could not lift a twenty pound sack of potatoes and was unsure whether she could pick up a ten pound baby. (Tr. 42-43). She also testified that she can lift her left arm above her head but not her right arm. (Tr. 43, 46). She further testified that she can reach onto the desk with either arm. (Tr. 43, 46). She estimated that she could stand for four or five minutes. (Tr. 44). Anderson testified that she is 5 feet eight inches tall and weighs 239 pounds. (Tr. 43). Anderson testified that she knows the types of food she should eat as a diabetic. (Tr. 48). She acknowledged that she has not been one hundred percent compliant taking her medication but estimated she is eighty-five percent compliant. (Tr. 48).

Here, substantial evidence supports the ALJ's finding that Anderson's hypertension, disorders of the back, diabetes, obesity, and degenerative joint disease of the shoulder were severe

impairments at step two, and that such impairments at step three, individually or in combination, did not meet or equal a listed impairment. Substantial evidence supports this determination.

RFC is what an individual can still do despite her limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *see Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Anderson argues that the ALJ's RFC determination is not supported by substantial evidence. Anderson contends that her impairments are more limited than indicated by the ALJ's RFC. Anderson points to the objective evidence that she walks with an antalgic gait, sometimes requires the use of cane, that her hip and back pain limits her ability to stand or move around. She also notes that she has been diagnosed with "frozen shoulder" and that this affects her ability to lift small amounts of weight. Finally, she notes that the side effects of her medication include drowsiness, which the ALJ did not consider in his RFC determination.

Contrary to Anderson's arguments, the ALJ's discussion of the record shows that he noted that she walks with an antalgic gait, uses a cane on occasion, takes medication "with the noted side effect of drowsiness" and her ability to reach but not lift. (Tr. 17). The ALJ carefully considered all of the medical evidence in formulating an RFC that addressed Anderson's physical impairments. The ALJ, based on the totality of the evidence, concluded that Anderson could perform light work restricted to the extent that she never be required to climb ropes, ladders, or scaffolds, and perform overhead reaching with the dominant upper extremity, and could occasionally stoop, crouch, kneel,

13

crawl, and negotiate stairs and ramps. The limitations take into account her obesity, and shoulder and back problems that the ALJ found supported by the record as a whole.  The ALJ gave specific reasons in support of this determination. This factor weighs in favor of the ALJ's decision.

### B. Diagnosis and Expert Opinion

The .second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The law is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455. The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id*. at 455-56. The Fifth Circuit in *Newton*  described good cause as where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or in otherwise unsupported by the evidence. *Id*. at 456.  "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453.  The six factors that must be considered by the ALJ before giving less than controlling weight to the opinion of a treating source are:  (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the source. 20 C.F.R. § 404.1527(d)(2); *Newton*, 209 F.3d at 456.  An ALJ does not have to consider the six factors "where there is competing first-hand medical evidence and

14

the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," and where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 507-11 (S.D.Tex. 2003). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

With respect to the opinions and diagnoses of treating physicians and medical sources, the ALJ wrote:

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above. Trepanjet Sadhu, M.D., a treating physician, has diagnosed the claimant with degenerative disc disease of the lumbar spine, diabetes mellitus, and hypertension (Ex. 6F/8, 24). Treatment notes indicate that the claimant had an antalgic gait and limited range of motion in the lumbar spine due to pain (Ex. 6F/8, 13). A Magnetic Resonance Imaging (MRI) scan of the claimant's lumbar spine revealed a disc bulge at L4-5 with mass effect on the right exiting L3 nerve root. There was also a disc bulge at L4-5 and some displacement of the L5 nerve root. In addition, the claimant had facet arthropathy of the L4-5 and some displacement of the L5 nerve root. In addition, the claimant had facet arthropathy of the L4-5 and L5-S1 vertebrae (Ex. 4F/22). X-rays have also described moderate to severe degenerative disc disease of the lumbar spine (Ex. 6F/6). The claimant's A1c levels have been 9.2, which is consistent with uncontrolled diabetes (Ex. 7F/10). Her blood pressure readings have also been high on occasion, such as 142 over 96 (Ex. 9F/9). With regard to the claimant's shoulder, an x-ray also revealed mild

degenerative changes at the acromioclavicular joint (Ex. 6F/7). She also had limited range of motion in that shoulder (Ex. 6F/18). These findings support the residual functional capacity in that the claimant's degenerative changes in her back, in combination with her other impairments, would limit her to light work with four hours of standing or walking, as well as postural restrictions, to prevent an exacerbation of her symptoms. Moreover, the claimant's shoulder disorder would prevent her from reaching overhead.

*       *       *

As for the opinion evidence, the State agency medical consultant initially found that the claimant could perform a range of sedentary work, with standing and walking limited to two hours (Ex. 2A). Upon reconsideration, however, the State agency medical consultant concluded that the claimant could perform light work with occasional postural limitations and never climbing ladders, ropes, or scaffolds (Ex. 4A). The undersigned gives limited weight to the initial evaluation and more weight to the reconsideration determination, as it is supported by the medical evidence, which indicates improved range of motion, as well as normal strength and sensation. Moreover, these findings are consistent with the claimant's activities of daily living.

The Administrative Law Judge notes that, despite the claimant's allegations of severe pain, no treating source has offered any limitations in her ability to work during the period at issue. While not determinative, this does not support the claimant's allegations of disabling pain. (Tr. 17-18).

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources. The Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d

16

at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. The regulations provide a two-step process to evaluate a claimant's alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, such as pain. 20 C.F.R. §§ 404.1529, 416.929. Second, the ALJ evaluates the intensity, persistence of the symptoms, and limiting effects of the symptoms on the claimant's ability to do basic work related activities. *Id.* This evaluation entails the ALJ considering the record, including medical and laboratory findings, the opinions of treating and non-treating medical sources, and other factors relevant to the claimant's symptoms such as daily activities; location, duration, frequency and intensity of pain and other symptoms; and measures taken (such as medication, treatment or home remedies) to alleviate those symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms, any measures other than treatment the claimant uses or has used to relieve pain or other symptoms, and any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929 (c). A claimant's testimony must be consistent with the objective medical

evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALL, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166. Thus the ALJ's evaluation of the claimant's subjective complaints is entitled to deference if supported by substantial evidence. *See Newton*, 209 F.3d. at 459.

Here, the ALJ concluded that Anderson's complaints concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. The ALJ wrote:

> The claimant makes the following allegations regarding the intensity, persistence, and limiting effects of her symptoms. The claimant alleges disability due to diabetes, sciatica, nerve problems, as well as back and leg problems. The claimant reports that she has difficulty with the following activities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using her hands. She indicates that she has difficulty getting in the bathtub and that the pain in her right shoulder has worsened with time. The claimant takes a variety of medications, including amitriptyline, metformin, tramadol, Lyrica, and Novolin insulin with the noted side effect of drowsiness. The claimant testified that she uses a cane on occasion, particularly when going up and down stairs. The claimant stated that she cannot lift twenty pounds and could possibly lift ten pounds with her left arm. She noted that she can stand for four to five minutes before pain in her left lower back occurs. She indicated that she also experiences swelling in her left lower extremity. Nevertheless, the claimant has reported the following activities of daily living: caring for her personal hygiene with some help, preparing simple meals, occasionally washing dishes, cleaning her personal restroom, driving, paying bills, shopping, using a checkbook, reading, singing, and watching television (*see* Exs. 5E, 6E, 10E, 20E, 26E).

Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above. Trepanjet Sadhu, M.D., a treating physician, has diagnosed the claimant with degenerative disc disease of the lumbar spine, diabetes mellitus, and hypertension (Ex. 6F/8, 24). Treatment notes indicate that the claimant had an antalgic gait and limited range of motion in the lumbar spine due to pain (Ex. 6F/8, 13). A Magnetic Resonance Imaging (MRI) scan of the claimant's lumbar spine revealed a disc bulge at L4-5 with mass effect on the right exiting L3 nerve root. There was also a disc bulge at L4-5 and some displacement of the L5 nerve root. In addition, the claimant had facet arthropathy of the L4-5 and some displacement of the L5 nerve root. In addition, the claimant had facet arthropathy of the L4-5 and L5-S1 vertebrae (Ex. 4F/22). X-rays have also described moderate to severe degenerative disc disease of the lumbar spine (Ex. 6F/6). The claimant's A1c levels have been 9.2, which is consistent with uncontrolled diabetes (Ex. 7F/10). Her blood pressure readings have also been high on occasion, such as 142 over 96 (Ex. 9F/9). With regard to the claimant's shoulder, an x-ray also revealed mild degenerative changes at the acromioclavicular joint (Ex. 6F/7). She also had limited range of motion in that shoulder (Ex. 6F/18). These findings support the residual functional capacity in that the claimant's degenerative changes in her back, in combination with her other impairments, would limit her to light work with four hours of standing or walking, as well as postural restrictions, to prevent an exacerbation of her symptoms. Moreover, the claimant's shoulder disorder would prevent her from reaching overhead.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant's activities of daily living, work history, and objective medical evidence do not support her allegations of disabling symptoms. As noted above, the claimant reported that she can care for her personal hygiene with some help, shop, clean, drive, wash dishes, prepare simple meals, pay bills, attend church and watch television (Ex.6E). Such activities are inconsistent with the claimant's allegations of limited standing. Moreover, they would require lifting consistent with that of light work. A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments (Ex. 4D). Turning to the medical evidence, the record indicates that the claimant has maintained normal strength and sensation, as well as improved range of motion, which is inconsistent with disabling levels of back pain (Ex. 6F/8, 13, 18;

9F/16). Despite her allegations of swelling, treatment notes reveal normal diabetic foot examinations with no signs of edema or loss of sensation (Ex. 7F/4; 9F/6, 8, 16). Although the claimant had degenerative changes in her shoulder, the x-rays indicated that they were mild, which is consistent with testimony that she could reach at table level. The claimant also testified that she is not entirely compliant with her diet or medication for her diabetes, which does not suggest that these limitations are that severe.

As for the opinion evidence, the State agency medical consultant initially found that the claimant could perform a range of sedentary work, with standing and walking limited to two hours (Ex. 2A). Upon reconsideration, however, the State agency medical consultant concluded that the claimant could perform light work with occasional postural limitations and never climbing ladders, ropes, or scaffolds (Ex. 4A). The undersigned gives limited weight to the initial evaluation and more weight to the reconsideration determination, as it is supported by the medical evidence, which indicates improved range of motion, as well as normal strength and sensation. Moreover, these findings are consistent with the claimant's activities of daily living.

The Administrative Law Judge notes that, despite the claimant's allegations of severe pain, no treating source has offered any limitations in her ability to work during the period at issue. While not determinative, this does not support the claimant's allegations of disabling pain.

Ralph St. Vincent Bradley, the claimant's son, submitted a letter. He indicated that the claimant experiences horrible back, leg, and arm pain, in addition to her diabetes. He noted that he has needed to help and that the claimant struggles to perform her activities of daily living. he indicated that the claimant could not undergo surgery due to cost and lack of support during the healing process (Ex. 22E). The Administrative Law Judge gives this letter little weight as it is not supported by the medical findings, which indicate normal strength and sensation. Moreover, the claimant's range of motion improved with time. While the MRI would support the allegations of pain, the extent of that pain is not supported by the medical evidence or the claimant's activities of daily living.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling pain and symptoms, as they indicate normal strength and sensation, as well as a lack of edema. The credibility of the claimant's allegations is weakened by her activities of daily living. The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above. (Tr. 17-18).

Anderson argues that the ALJ failed to properly evaluate her subjective complaints.

Anderson argues that SSR 96-7p, has been superseded by SSR 16-3p, which now makes clear that the subjective symptoms evaluation is not an examination of an individual's character. Anderson argues that the SSR 16-3p should be applied retroactively. Anderson contends that the ALJ's analysis concerning her ability to care for her personal hygiene with some help, shop, clean, drive, wash dishes, prepare simple meals, pay bills, attend church and watch television, somewhat overstates Plaintiff's abilities in the area of daily living, and that the ALJ erred in relying on the credibility of Plaintiff's testimony to find her complaints are not credible. The Commissioner counters that the ALJ applied the ruling in affect at the time the decision was issued on August 11, 2014. The Commissioner further argues that even assuming that the regulation applied retroactively, it would not warrant remand because the ALJ applied the two step process for the evaluation of pain or other symptoms and his decision was based on the record. The Magistrate Judge agrees.

On March 16, 2016, SSR 96-7p was superseded by Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). SSR 96-7p was in effect when the ALJ issued his decision. Absent explicit language to the contrary, administrative rules do not ordinarily apply retroactively. *see, e.g., Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988)("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). SSR 16-3p does not explicitly state that it applies retroactively. Courts that have compared SSR 96-7p and SSR 16-3p have found that the new ruling was designed to clarify rather than change existing law. *See Mayberry v. Colvin,* G-15-330, 2016 WL 7686850 (S.D.Tex. Nov. 28, 2016), *report and recommendation adopted,* 2017 WL 86880 (Jan. 10, 2017) citing to cases that have reached the same conclusion, i.e, *Rockwood v. Colvin,* No. 15 C 192, 2016

WL 2622325, at *3 n. 1 (N.D. Ill. May 9, 2016); *Burnstad v. Colvin,* Case No. 6-15-cv-921-SI, 2016 WL 4134535, at 11 n.9 (D.Or. Aug. 2, 2016); *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App 113, 119 n. 1 (6th Cir. 2016).

Here, the ALJ applied SSR 96-7p, and evaluated the objective evidence in light of Anderson's subjective complaints. Notwithstanding the ALJ's use of the term "credibility," the ALJ's decision shows that he did not discount Anderson's subjective symptoms based on her character or veracity but cited to specific evidence in the record, which the ALJ found undermined Anderson's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994)(recognizing that while the ALJ "must articulate reasons for rejecting the claimant's subjective complaints of pain" the court has declined to apply a "rigid approach"). The ALJ analyzed Anderson's treatment records, work history, function reports and testimony.   Based on that information, the ALJ concluded that Anderson's "statements concerning the intensity, persistence and listing effects of theses symptoms are not entirely credible." (Tr. 17). The totality of the ALJ's decision shows that he did not impugn Anderson's character or state that she was untruthful. *See Mayberry*, 2016 WL 7686850, at * 6 ("despite her contentions to the contrary, the ALJ did not impugn Mayberry's character or state that she was untruthful; instead the ALJ simply weighted the evidence in the record to determine whether it supported Mayberry's symptoms.") Because the ALJ properly evaluated Anderson's subjective complaints, and weighed the medical evidence, as is clear from the detailed discussion of the record, remand is not warranted.  This factor weighs in favor of the ALJ's decision.

### D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that the ALJ questioned Norman C. Hooge, Ph.D., a vocational expert ("VE"), at the hearing. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

The ALJ posed the following comprehensive hypothetical questions to the VE:

Q. Dr. Hugey, assume with me a person of the same age, education, vocational background as the Claimant. Now further assume with me the following hypothetical number one. Under this first hypothetical, such a person could work at the level of

23

light as defined by the Labor Department's <u>Dictionary of Occupational Titles</u>. However, standing or walking–and/or walking is limited to about four hours in an eight hour work day; no climbing ropes, ladders, or scaffolds; could occasionally stoop, crouch, kneel, crawl, and negotiate stairs and ramps; no overhead reaching with the dominant upper extremity. Any jobs in the national economy such a person could do?  If so, specify those at the highest exertional level first.

A.  Such an individual–I'm going to give you some examples, Your Honor —could be an officer helper; 239.567-010; I'm going to reduce it 10 percent to take care of any excess walking maybe over four hours, but it should not be generally; you're still looking at large numbers in the region; the region's the state of Texas and parts of Southwest Louisiana; conservatively 2,500; nationally well over 300,000 with this reduction.  Such an individual could be a storage facility rental clerk; 295.367-026; some 1,200 in the region; well over 100,000 nationally.  Such an individual could be a courier messenger delivery person; 230.663-010; some 1,500 plus in the region; well over 200,000 nationally.

Q.  Those are all light and unskilled?

A.  That's right.  Your Honor.

Q.  Hypothetical number two: same as hypothetical number one, however let's add the following additional restrictions.  This person requires up to six unscheduled breaks a day listing 15 minutes each. Any jobs?

A.  In my opinion, Your Honor, no jobs would be available on a competitive basis. Tr. 50-51).

Anderson's counsel declined to question the VE.  (Tr. 51).  A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Anderson was not disabled.  Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Anderson could perform work as an officer helper, a storage facility rental clerk, and a courier. The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that

24

Anderson was not disabled within the meaning of the Act and therefore was not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.


## V.  Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Strauss was not disabled within the meaning of the Act, that substantial evidence supports the ALL's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No.27), is  DENIED, Defendant's Motion for Summary Judgment (Document No. 14) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 15ᵗʰ day of February 2017

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE